

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | | |
|---|---|---|
| SHANANN MESDO, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL NO. 9:20-CV-18 |
| KILOLO KIJAKAZI, | § | |
| Acting Commissioner of Social Security | § | |
| Administration, | § | |
| *Defendant*. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff, Shanann Mesdo, seeks judicial review of the Commissioner of the Social Security Administration's final decision denying Plaintiff's application for disability-based benefits. (Doc. No. 2).  In accordance with 28 U.S.C. § 636(c), the Parties in this case have consented to have a United States Magistrate Judge conduct all proceedings, including trial, entry of a final judgment, and all post-judgment proceedings. (*See* Doc. Nos. 4, 16).  The undersigned finds that the Commissioner's decision denying Plaintiff's application should be reversed and remanded.

# I.      Background

## A.  Procedural History

On December 15, 2017, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits, alleging disability since May 15, 2013.  (Doc. No. 17-6 at 2).  On March 15, 2018, the Social Security Administration denied Plaintiff's application, and upon reconsideration on June 22, 2018.  (Doc. No. 17-5 at 2, 8).  Thereafter, Plaintiff amended her alleged onset date of disability to August 7, 2017.  (Doc. No. 17-3 at 6).  On April 16, 2019, the ALJ found that Plaintiff was disabled from August 7, 2017, to September 7, 2018, but no longer disabled beginning September 8, 2018.  (*Id.* at 16, 18).  Plaintiff appealed the ALJ's decision to the Appeals Council (AC), and on December 4, 2019, the AC denied Plaintiff's request for review.  (Doc. No. 17-2 at 3).  As a result, the ALJ's decision became the Commissioner's final decision for purposes of review before this Court.  On January 30, 2020, Plaintiff timely filed this civil action pursuant to 42 U.S.C. § 405(g), asking the Court to review her denied application for social security benefits.  (Doc. No. 2).

## B.  Entitlement to Benefits and Sequential Evaluation Process

To qualify for disability benefits, a claimant must suffer from a disability.  *See* 42 U.S.C. § 423(d)(1)(A).  The Social Security Act defines a disability as a "medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity."  42 U.S.C. § 423(d)(1)(A); *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).  The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act.  *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); 20 C.F.R. § 404.1520 (2021).  The applicable analysis is as follows:

> First, the claimant must not be presently working.  Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [his] physical or mental ability to do basic work activities.  Third,

> to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations ["The Listings"].  Fourth, a claimant must establish that his impairment prevents him from doing past relevant work.  Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work.  If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.

*See Waters*, 276 F.3d at 718 (quoting *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991)); *see also* 20 C.F.R. § 404.1520.

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity (RFC).  *Kneeland v. Berryhill*, 850 F.3d 749, 754 (5th Cir. 2017); 20 C.F.R. § 404.1520(e).  "The claimant's RFC assessment is a determination of the most the claimant can still do despite his [or her] physical and mental limitations and is based on all relevant evidence in the claimant's record."  *Id.* (citations and internal quotation marks omitted).  The ALJ uses the RFC at Step Four to determine whether the claimant can perform his or her past relevant work and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (v).  If at any step the Commissioner finds that the claimant is or is not disabled, the ALJ need not continue the analysis.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

### C.  <u>Summary of the ALJ's Decision</u>

Plaintiff was 35 years old at the time she alleged the onset of her disability.  (Doc. No. 17-3 at 6).  She completed two years of college, and she has past work experience as a waitress, bartender, liquor establishment manager, aesthetician-cosmetologist, administrative assistant, and accounts receivable clerk.[1]  (Doc. Nos. 17-3 at 14; 17-7 at 4).

---

[1] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R § 404.1520(a)(4) and ultimately concluded that Plaintiff was disabled from August 7, 2017, to September 7, 2018, but no longer disabled beginning September 8, 2018. (Doc. No. 17-3 at 13).  The Court summarizes the ALJ's findings based on the time periods in which he found Plaintiff was and was not disabled.

Specifically, from August 7, 2017, to September 7, 2018, the ALJ found as follows:

- At Step One, Plaintiff had not engaged in substantial gainful activity[2] since August 7, 2017, the alleged onset date.  (*Id.* at 10).

- At Step Two, Plaintiff had "[t]he following severe impairments: bronchial stenosis and obesity."  (*Id.*).

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.* at 11).

- At Step Three but before Step Four, Plaintiff had the RFC to: "perform sedentary work except [Plaintiff] can stand and walk two hours of an eight-hour workday, sit for six hours of an eight-hour workday, and occasionally lift ten pounds.  [Plaintiff] may occasionally climb ramps and stairs, stoop, kneel, and crouch.  [Plaintiff] should never climb ladders, ropes, or scaffolds or crawl.  Plaintiff should avoid exposure to outside weather conditions, extreme heat, and extreme cold.  [Plaintiff] should avoid exposure to fumes, noxious odors, gases, chemicals, or poor ventilation.  [Plaintiff] should not work near unprotected heights or dangerous machinery.  [Plaintiff] would miss two to three days of work per month due to her impairments."  (*Id.* at 11-12).

- At Step Four, relying on the testimony of the vocational expert (VE) and considering Plaintiff's RFC, she was not capable of performing any past relevant work as a waitress, bartender, liquor establishment manager, aesthetician-cosmetologist, administrative assistant, and accounts receivable clerk.  (*Id.* at 14).

- At Step Five, considering Plaintiff's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that she could have performed.  (*Id.* at 15).

---

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether a profit is realized). 20 C.F.R. § 404.1572(a) (2021).

4

- The ALJ concluded that "[Plaintiff] was under a disability, as defined by the Social Security Act, form August 7, 2017, through September 7, 2018." (*Id.* at 16).

Beginning September 8, 2018, the ALJ found that medical improvement occurred and that Plaintiff's disability ended. (*Id.*). Therefore, on September 8, 2018, the ALJ found as follows:

- At Step Two, Plaintiff had not developed any new impairments and still had "[t]he following severe impairments: bronchial stenosis and obesity." (*Id.*).

- At Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*).

- At Step Three but before Step Four, Plaintiff experienced medical improvement and her RFC improved to: "perform sedentary work . . . except [Plaintiff] can stand or walk for two hours of an eight-hour workday, sit for six hours of an eight-hour workday, and occasionally lift ten pounds.  [Plaintiff] may occasionally climb ramps and stairs, stoop, kneel, and crouch.  [Plaintiff] should never climb ladders, ropes, or scaffolds.  [Plaintiff] should avoid exposure to outside weather conditions, extreme heat, and extreme cold.  [Plaintiff] should also avoid exposure to fumes, noxious odors, gases, chemicals, and poor ventilation.  [Plaintiff] should avoid working near unprotected heights and dangerous machinery." (*Id.* at 16-17).

- At Steps Four and Five, "[Plaintiff] has been capable of performing past relevant work as an administrative assistant and an accounts receivable clerk. This work does not require the performance of work-related activities precluded by [Plaintiff's] current [RFC]." (*Id.* at 18).

- The ALJ concluded that "[Plaintiff's] disability ended September 8, 2018, and [Plaintiff] has not become disabled again since that date." (*Id.*).

## II.     Standard of Review

Review of Social Security disability cases "[i]s limited to two inquiries:  (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *See generally* 42 U.S.C. § 405(g) (describing and elaborating on the standard for judicial review of decisions of the Commissioner of Social Security); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38

F.3d 232, 236 (5th Cir. 1994)).  Substantial evidence is "more than a mere scintilla and less than a preponderance."  *Id.* (citation and internal quotation marks omitted).  It refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  In applying this standard, the court "[m]ay not reweigh the evidence or substitute [its] judgment for the Commissioner's."  *Id.*  The Court may affirm only on the grounds that the Commissioner stated for his decision.  *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam).

Reviewing courts give the Commissioner's decisions great deference.  *Id.* at 565-66. Courts may not re-weigh evidence, try issues de novo, or substitute their judgments for those of the Commissioner.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995).  A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance.  *Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary").  When the Commissioner fails to apply correct principles of law, or when substantial evidence does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  *See* 42 U.S.C. § 405(g).  Thus, courts have the power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing.  Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies.  *See, e.g.*, *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### III.    Discussion and Analysis

On appeal, Plaintiff presents two issues.  Plaintiff first alleges that the ALJ's decision to not find the opinion of Dr. Richard Rubin, her treating rheumatologist, persuasive after September 7, 2018 is not supported by substantial evidence.  (Doc. No. 24 at 3).  Next, Plaintiff asserts that

"[t]he ALJ's decision was not supported by substantial evidence [because] the hypothetical presented to the vocational expert . . . neglected to include all limitations supported by [the] evidence." (*Id.* at 7).  The Court addresses each issue raised by Plaintiff in turn.

## A. <u>Whether the ALJ Properly Considered the Treating Physician's Opinion in his RFC Determination</u>

Plaintiff argues that the ALJ failed to properly consider Dr. Rubin's opinion and articulate its persuasivness pursuant to 20 C.F.R. § 404.1520c.  (Doc. No. 24 at 4).  Plaintiff claims that the ALJ was required to evaluate Dr. Rubin's opinion for persuasiveness under the factors set forth in 20 C.F.R. § 404.1520c(c), with primary consideration given to the supportability and consistency factors.  (*Id.*).  In support of Plaintiff's argument, she cites to information in the medical record that she contends the ALJ ignored in evaluating the persuasiveness of Dr. Rubin's opinion. (*See id.* at 3-6).  In response, the Commissioner lodges several arguments.  The Commissioner challenges whether "Dr. Rubin's statement is a medical opinion at all." (Doc. No. 25 at 6).  The Commissioner then argues that Dr. Rubin's statement is consistent with the ALJ's RFC assessment.  (*Id.*).  Finally, the Commissioner asserts that the ALJ properly considered Dr. Rubin's statement and substantial evidence supports the ALJ's findings.  (*Id.*).  All of the Commissioner's arguments fail to pass muster, and the Court agrees with Plaintiff.

The ALJ must evaluate a medical opinion pursuant to the following factors:  (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors.  20 C.F.R. § 404.1520c(c)(1)-(5) (2021).  The most important factors are supportability and consistency of the medical opinion.  *Id.* at § 404.1520c(b)(2).  In articulating the persuasiveness of a medical opinion, the ALJ must explain how he or she considered the supportability and consistency factors in evaluating a medical opinion.  *Id.*  The ALJ should explain the other factors unless the supportability and consistency factors are dispositive. *Id.* at § 404.1520c(b)(3).

7

Dr. Rubin's statements were about Plaintiff's impairment-related limitations in areas concerning the physical demands of work, *see* 20 C.F.R. § 404.1513(a)(2)(ii) (2021), rendered by a licensed healthcare worker within the scope of his practice, *see* 20 C.F.R. § 404.1502(d) (2021). As a result, Dr. Rubin's statements are "opinions" under 20 C.F.R. § 404.1520c. Therefore, the ALJ had to evaluate the persuasiveness of Dr. Rubin's opinion based on the factors set forth in 20 C.F.R. § 404.1520c(c). *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). In his opinion, the ALJ concluded that Dr. Rubin's medical opinion was neither "consistent with [nor] supported by the medical records dated after September 7, 2018." (Doc. No. 17-3 at 18). Therefore, the Court need only address the supportability and consistency factors.

First, the supportability factor is defined as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The ALJ did not explain how he considered the supportability factor as required by 20 C.F.R. § 404.1520c(b)(2). The ALJ singled out a portion of Dr. Rubin's letter, dated September 26, 2018, and stated that Dr. Rubin "opined that [Plaintiff] could not participate in gainful employment due to the scarring in her trachea, which makes it difficult for her to breathe." (Doc. No. 17-3 at 17). From this, the ALJ concluded that Dr. Rubin's opinion was not supported by medical records dated after September 7, 2018. (*Id.* at 18). The ALJ appears to misrepresent Dr. Rubin's opinion as a whole. Dr. Rubin wrote as follows:

> [Plaintiff] is currently under my care for a potentially life-threatening illness called Relapsing Polychondritis. Although it has many manifestations, in [Plaintiff's] case the most severe feature is that it has caused her trachea (windpipe) to scar and narrow dangerously making it difficult for her to breathe. She has to undergo

> repeated and delicate procedures to maintain its patency.  There is no predictability
> to how fast or severely it scars down.  Because of this[,] I do not believe that
> [Plaintiff] can participate in gainful employment.  Further, I believe it may be
> medically dangerous for her to do so.  Although she is taking aggressive doses of
> potentially toxic anti-inflammatory medications that may ultimately control the
> disease.  There is no way to know when or if this will occur.  For now, I believe
> that she is 100% medically disabled by this disease.

(Doc. No. 17-10 at 55).  The Court first notes that in Dr. Rubin's letter, he stated that "I do not

believe that [Plaintiff] can participate in gainful employment," and "I believe that she is 100%

medically disabled by this disease."  *Id.*  The Court does not find these statements permissible by

a treating physician in the present case, and therefore, did not consider them in its decision.

*See* 20 C.F.R. § 404.1520b(c) (2021).

In reviewing the rest of Dr. Rubin's letter, the Court concludes that the ALJ misrepresented

it as a whole.  The ALJ disregarded that Plaintiff's condition causes her trachea to scar and narrow

dangerously, which constricts her breathing.  (Doc. No. 17-10 at 55).  To remedy her narrowing

trachea, Plaintiff must undergo "repeated and delicate procedures" to maintain the patency of her

trachea.  (*Id.*).  Moreover, the speed and severity of scarring to her trachea is unpredictable.  (*Id.*)

To treat her condition, Plaintiff is taking "aggressive doses of potentially toxic anti-inflammatory

medication which *may . . .* control [her] disease."  (*Id.* (emphasis added)).  Dr. Rubin concluded

that he believes it would be medically dangerous for her to return to gainful employment.  (*Id.*).

Based on the foregoing, the ALJ does not appear to have considered any portion of Dr. Rubin's

letter.

The ALJ provides no support for his contrived conclusion.  Instead, he misses the mark

and ignores information in the record that supports Dr. Rubin's opinions.  On multiple occasions

after September 7, 2018, Plaintiff continued to experience issues with her Relapsing Polychondritis

(RP) and use of long-term, high-risk medication.  (Doc. Nos. 17-11 at 57; 17-13 at 24, 31).  On

December 13, 2018, Dr. Rubin prescribed Plaintiff with Leflunomide to treat her RP and its

associated issues.  (Doc. No. 17-11 at 57).  In February 2019, Plaintiff was treated for bronchial stenosis, RP, dyspnea, and respiratory abnormalities.  (Doc. No. 17-13 at 24, 31, 33).  Accordingly, substantial evidence does not support the ALJ's findings because he did not articulate his rationale in considering the supportability of Dr. Rubin's medical opinion.

Second, the consistency factor is defined as follows:  "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).  To reiterate, the ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions . . . in [his] determination or decision."  *See* 20 C.F.R. § 404.1520c(b)(2).  Just like the supportability factor, the ALJ did not articulate his analysis of the consistency factor at all in his discussion of Dr. Rubin's medical opinion.  Thus, the ALJ erred in evaluating Dr. Rubin's opinion.

**B.  Whether the ALJ's Hypothetical Presented to the Vocational Expert Included All Limitations Supported by the Evidence.**

Plaintiff argues that the ALJ's hypothetical posed to the vocational expert failed to include all of her limitations.  (Doc. No. 24 at 7).  The Fifth Circuit established a two-part test for determining when a defective hypothetical question produces reversible error:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representatives is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on a such a defective question cannot stand.

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).  The ALJ concluded that "the vocational expert's testimony regarding [Plaintiff's] ability to perform past relevant work as an administrative

assistant or an accounts receivable clerk is consistent with the information contained in the Dictionary of Occupational Titles."  (Doc. No. 17-3 at 18).  This Court found that the ALJ failed to articulate the persuasiveness of Dr. Rubin's opinion.  As a result, the Court cannot be sure that the ALJ presented the vocational expert with a proper hypothetical question including all of Plaintiff's disabilities because Dr. Rubin's opinion was not correctly evaluated pursuant to 20 C.F.R. § 404.1520c.

## IV.     Remedy

Upon review of social security proceedings, this Court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  Plaintiff requests that the Court both reverse the Commissioner's decision and remand with an award of benefits.  (Doc. No. 24 at 9).  Although the normal result is to reverse and remand for further fact finding, the Fifth Circuit has explained that this power extends to an award of benefits by a reviewing court.  *Murkeldove v. Astrue*, 635 F.3d 784, 792 (5th Cir. 2011). When (1) the denial of benefits was not supported by substantial evidence, and (2) the record demonstrates the claimant is disabled, the Court can reverse and remand for an award of benefits. *See Harrell v. Harris*, 610 F.2d 355, 359-60 (5th Cir. 1980) (per curiam).  Restated, a remand for an award of benefits is appropriate when there is no useful purpose to additional fact finding.  *See Shelton v. Astrue*, No. 1:08-cv-403, 2011 U.S. Dist. LEXIS 34108, 2011 WL 1234910, at *2 (E.D. Tex. Jan. 31, 2011).

Although Plaintiff has shown that her denial of benefits was not supported by substantial evidence, she has failed to demonstrate that she is disabled.  Plaintiff requests that the Court remand to the Commissioner "with instructions to afford proper weight to Dr. Rubin's opinions . . ."

Accordingly, the Court finds it appropriate to remand to the Commissioner to properly consider the persuasiveness of Dr. Rubin's opinion pursuant to 20 C.F.R. § 404.1520c.  *See Emerson v. Barnhart*, No. 03-2362-JWL, 2004 U.S. Dist. LEXIS 4522, 2004 WL 555424 (D. Kan. Mar. 19, 2004) (remanding a denial of social security disability benefits over an immediate award of benefits was warranted because no findings were made concerning the weight afforded to the treating physician's opinions and other evidence).

<strong>V.     Conclusion and Order of the Court</strong>

Based on the findings and conclusions of law stated herein, the Court **ORDERS** that the Commissioner's decision is **REVERSED**.  The Court **FURTHER ORDERS** that this action is **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for re-evaluation of Dr. Richard Rubin's medical opinion under 20 C.F.R. § 404.1520c.  Plaintiff shall be afforded the opportunity to supplement the record with updated medical records and permitted to testify at another hearing before the ALJ.  The Court will enter final judgment separately.

**SIGNED this the 31st day of August, 2021.**


KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE